**SIGNED THIS: June 26, 2007**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | In Bankruptcy |
| BRADLEY E. SMITH and ) | |
| SANDRA K. SMITH, ) | Case No. 06-70577 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| JOHN L. SWARTZ, ) | |
| Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 06-7178 |
| ) | |
| BRADLEY E. SMITH; ) | |
| SANDRA K. SMITH; ) | |
| KEYBANK USA, N.A.; ) | |
| MACY & LOBER; ) | |
| PAUL PERRINE and ) | |
| KEELY PERRINE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| PAUL PERRINE and ) | |
| KEELY PERRINE, ) | |
| Cross-Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| BRADLEY E. SMITH and ) | |
| SANDRA K. SMITH, ) | |
| ) | |
| Cross-Defendants. ) | |

-1-

# **O P I N I O N**

This matter is before the Court on the Motion for Summary Judgment filed on February 1, 2007, by John L. Swartz, Plaintiff and Chapter 7 Trustee, in this adversary proceeding which seeks the turnover of property pursuant to 11 U.S.C. §541. This Court has jurisdiction over this core adversary proceeding pursuant to provisions of 28 U.S.C. §§157(b)(2)(E) and 1334.

On May 12, 2006, Bradley E. Smith and Sandra K. Smith ("Debtors") filed their voluntary Chapter 7 petition in bankruptcy. John L. Swartz ("Trustee") was duly appointed as Trustee of Debtors' bankruptcy estate. On August 17, 2006, Trustee filed his Complaint giving rise to this adversary proceeding to recover funds which Trustee alleges belong to the Debtors' bankruptcy estate.

On October 29, 2001, Defendants Paul and Keely Perrine ("Perrines") entered into a contract with the Debtors for the installment purchase by the Perrines from the Debtors of improved real estate situated at 621 West Dean Street, Virden, Illinois ("the Virden Property"). The contract obligated the Perrines to pay certain sums to the Debtors and, upon payment in full, Debtors were obligated to convey good title to the Virden Property to the Perrines. At the time of the signing of the contract, the Virden Property was subject to a consensual first mortgage lien in favor of Defendant, KeyBank, USA, N.A. ("KeyBank").

In November, 2003, the Perrines obtained financing through

-2-

Concorde Acceptance Corp. ("Concorde") to pay the Debtors the unpaid balance due under the contract.[1]  Unbeknownst to the Perrines, on September 19, 2003, KeyBank had filed a complaint to foreclose its mortgage because of defaults in Debtors' mortgage payments.  On December 3, 2003, Defendant, Macy & Lober - a law firm in Litchfield, Illinois - conducted the closing on the sale.  Prior to the closing, Macy & Lober received a payoff statement dated November 20, 2003, showing the amount required to pay the balance of the mortgage owed to KeyBank as of December 30, 2003.  That amount was $107,614.66.  At the time of the closing, the Perrines tendered $123,250 to the Debtors.  Debtors executed and delivered a deed to the Perrines, and that deed was recorded in Macoupin County, Illinois.  Macy & Lober delivered to KeyBank the sum of $107,614.66 as tender in satisfaction of the KeyBank mortgage, delivered to the Debtors the sum of $8,529.48, and paid other expenses of the closing.  With a letter to Macy & Lober dated December 22, 2003, KeyBank rejected the tendered sum and returned the funds to Macy & Lober as being insufficient to satisfy the

---

[1] Concorde appears as lender on the Mortgage and Adjustable Rate Note dated December 3, 2003, wherein the Perrines are the borrowers. Copies of said documents are attached to the Motion for Relief from Stay filed with respect to the Virden Property on October 5, 2006. However, for some unknown reason, said Motion was filed on behalf of Homecomings Financial ("Homecomings"). The Motion was granted as to Homecomings by Order of this Court dated November 7, 2006. Because the mortgage documents filed herein refer only to Concorde and not to Homecomings, the Court will refer to the Perrines' lender as Concorde.

Debtors' mortgage. In a letter addressed to Sandra K. Smith dated November 21, 2003, KeyBank notified the Debtors that the total amount necessary to pay off the KeyBank mortgage on or before December 30, 2003, was $118,412.34. That total included the $107,614.44 principal balance plus, among other things, interest, late charges, foreclosure fees and costs. That sum was never tendered to KeyBank. Macy & Lober continues to hold the $107,614.66 in a trust account. The Perrines have been in possession of the Virden Property since the execution of the installment contract.

Trustee's Complaint asserts that the funds held by Macy & Lober are property of the bankruptcy estate under 11 U.S.C. §541. Trustee seeks turnover of the funds.

The Perrines dispute the Trustee's assertion and, in their Answer to the Complaint, seek the turnover of the funds in question to them free and clear of any interest of the Trustee or any other Co-Defendant. Additionally, they have filed a cross-claim against the Debtors asserting nondischargeability of debt pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(6). The Perrines maintain that, despite having actual knowledge of the pending foreclosure by KeyBank, Debtors failed to advise the Perrines of such, and that the Debtors intentionally misrepresented to the closing agent the amount necessary to satisfy the KeyBank mortgage. The Perrines further contend that the Debtors, in signing and delivering their

deed to the Perrines, had actual knowledge that they were not conveying good title to the Virden Property.

KeyBank also disputes the Trustee's contention that the funds are property of the estate.  KeyBank makes a claim to the subject funds; KeyBank also argues against a turnover in favor of the Trustee based upon equity and unjust enrichment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Bankr.P. 7056, incorporating by reference Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). Summary judgment will be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom. Central Nat. Life Ins. Co. v. Fidelity and Deposit Co. of Maryland, 626 F.2d 537, 539 (7th Cir. 1980) *citing* U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962).  On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party.  In re Chambers, 348 F.3d 650, 654 (7th Cir. 2003).  It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249, 106 S.Ct. 2505, 2511 (1986).  The movant bears the burden to prove each fact material to its claim and to establish that each fact is not in genuine dispute.  If the movant fails to make that showing, summary judgment is not proper and must be denied.  *See* In re Rogstad, 126 F.3d 1224, 1227-28 (9th Cir. 1997).

"The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." In re JII Liquidating, Inc, 341 B.R. 256, 263 (Bankr. N.D. Ill. 2006).  Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law.  ANR Advance Transp. Co. v. International Brotherhood of Teamsters, Local 710, 153 F.3d 774, 777 (7th Cir. 1998).  The entry of summary judgment against a party is mandated, if, after adequate time for discovery and upon motion, that party fails to make a showing sufficient to establish the existence of an element essential to that party's case.  Celotex Corp. v. Catrett, *supra*, 477 U.S. *at* 322, 106 S.Ct. *at* 2552.

In his Reply to KeyBank's Response to Motion for Summary Judgment, Trustee correctly points out that KeyBank did not comply with Local Rule 7.1(D)(2).  As the Court has recently noted, the Seventh Circuit has "repeatedly upheld the strict enforcement" of local rules governing summary judgment motions, including those in this District.  In re Clayton,___ B.R. ___, 2007 WL 1467227 (Bankr. C.D. Ill.) *citing* Waldridge v. American Hoechst Corp., 24 F.3d 918,

922 (7th Cir. 1994).  Strict compliance with Local Rule 7.1(D) is necessary and is expected by the Court.

KeyBank's failure to comply with Local Rule 7.1(D)(2) was not the only impediment for the Court in analyzing and adjudicating this matter.  On January 11, 2007, the Court held a telephonic hearing during which the Court ordered the Trustee to file his Motion for Summary Judgment within 21 days.  The Court then set dates for the Defendants to respond to the Motion and for the Trustee to reply to the Defendants' responses.  A scheduling Order was entered on the following day memorializing the Court's ruling.

The Trustee timely filed his Motion for Summary Judgment and accompanying brief, and KeyBank timely filed its Response to Motion for Summary Judgment and accompanying brief, to which Trustee filed a Reply.  However, for reasons which are not entirely clear, neither Macy & Lober nor the Perrines filed a Response to Trustee's Motion for Summary Judgment.

In addition, and also for reasons which are unclear to the Court, the Trustee failed to name or move to add Concorde as a defendant in his adversary complaint.  Trustee clearly knew of Concorde's existence and interest in this matter inasmuch as Concorde had moved for and received stay relief in the Debtors' bankruptcy case shortly after the filing of the adversary complaint. This omission would obviously preclude, for due process reasons, the Court from entering any order affecting any rights

Concorde might have had in and to the escrowed funds.

Section 541 of the Bankruptcy Code provides that a bankruptcy estate is created upon the filing of a bankruptcy petition, and that estate is comprised of virtually all of the legal and equitable interests of the debtor in property as of the commencement of the case. "The filing of a petition under Chapter 7 of the United States Bankruptcy Code creates an estate comprised of property described in 11 U.S.C. §541(a)." In re Foos, 183 B.R. 149, 155 (Bankr. N.D. Ill. 1995); *see also* In re Jones, 768 F.2d 923, 926 (7th Cir. 1985). The legislative history of Section 541 indicates that the scope of "property of the estate" is broad: "It includes all kinds of property, including tangible or intangible property [and] causes of action. . .". H.R. Rep. No. 595, 95th Cong. 1st Sess. 367, *reprinted in* 1978 U.S.C.C.A.N. 5787, 7323. *See also* U.S. v. Whiting Pools, Inc., 462 U.S. 198, 205, 103 S.Ct. 2309, 2313 (1983); In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993); Matter of Smith, 640 F.2d 888, 890 (7th Cir. 1981); Matter of Geise, 992 F.2d 651, 655 (7th Cir. 1993). However, the estate, and the bankruptcy court's jurisdiction, does not extend beyond a debtor's interest in certain property. In re Marrs-Winn Co., Inc., 103 F.3d 584, 589 (7th Cir. 1996). The question of what is considered "property of the estate" under§ 541(a), is a question to be decided under federal law. In re Yonikus, *supra*, 996 F.2d *at* 869.

In this case, the dispute is over certain funds in which, the Trustee alleges, Debtors have certain rights and interests. Such rights and interests, to whatever extent they exist, arise out of the contract with the Perrines, and those contractual rights and interests are property of the bankruptcy estate. Under the contract, Debtors are entitled to the funds in escrow upon their delivery of "good and sufficient stamped warranty deed", i.e. good and merchantable title in and to the Virden Property.

The obligations of Debtors under the contract are misstated by the Trustee in his arguments here. Debtors were not merely obligated to execute a deed and, once having done so, they thereby became entitled to payment under the contract by the Perrines. The parties did not contemplate the payment of money in exchange for the mere execution of a deed of conveyance. Rather, the parties clearly intended for the Debtors to be contractually obligated to convey good title to the Virden Property. Debtors did not do so when they executed the warranty deed conveying title in the Virden Property to the Perrines. Debtors could not convey good title without obtaining the release of KeyBank's first mortgage lien, which they failed to do.

Because the Virden Property remains subject to the first mortgage lien of KeyBank, and because the Debtors have not performed their obligations under the contract, Debtors are not entitled to payment under the contract. Insofar as the Trustee -

on behalf of the bankruptcy estate - steps into the shoes of the Debtors, Trustee would have to comply with the terms of the contract in order for the bankruptcy estate to become entitled to the escrowed funds.  Because the acquisition of an interest in the subject funds by the Debtors was contingent, by virtue of the contract, upon Debtors transferring "good title" in and to the subject premises, Trustee would have to obtain the release of KeyBank's first mortgage so that he could pass good title in and to the Virden Property to the Perrines.  Obviously, in order to do that, Trustee would have to satisfy the first mortgage lien of KeyBank.  The uncontroverted evidence in this case is that there would be nothing left from the escrowed funds for the bankruptcy estate if Trustee were to pay off the first mortgage lien of KeyBank.  The amount of KeyBank's first mortgage is at least as much as the amount being held in escrow, and likely much more.  Consequently, the Trustee cannot prevail in his efforts seeking turnover of the escrowed funds.

Trustee contends that KeyBank's return of the funds to Macy & Lober constituted rejection of the funds, and that KeyBank relinquished the funds without any reservation of right.  Trustee's contention misses the mark inasmuch as KeyBank never relinquished or released its first mortgage lien, and no colorable argument could be made that the rejection of the funds constituted a release of the mortgage, irrespective of the apparently contradictory

information KeyBank provided regarding the correct payoff figures. Consequently, Trustee never achieved superior status to KeyBank under the "strong arm clause" of 11 U.S.C. §544 or under any other provision of the Bankruptcy Code. In fact, as it relates to the Virden Property, Trustee's position under 11 U.S.C. §544 would be inferior to that of KeyBank and, presumably, inferior to that of Concorde as well, assuming proper perfection of Concorde's second mortgage.

This outcome is consistent with the equities in this case. At no relevant point in time did Debtors have sufficient equity in the Virden Property that there would have been funds available for the benefit of unsecured creditors after payment of the KeyBank mortgage and Debtors' homestead claims. The turnover of the escrowed funds in this case to the Trustee would have resulted in a windfall to unsecured creditors at great cost to innocent parties. Such an outcome would, to borrow a phrase from United States Supreme Court Chief Justice Harlan Fiske Stone, "offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

For the reasons set forth above, the Trustee's Motion for Summary Judgment is denied. Furthermore, based upon the rationale set forth herein, the Court finds, as a matter of law, that the funds in escrow with Macy & Lober are not property of the

-11-

bankruptcy estate, and Trustee has no colorable claim to any of said funds. Accordingly, Trustee's Complaint for turnover pursuant to 11 U.S.C. §541 is dismissed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###